ALBERT A. SCHAEFER, administrator with the will annexed, *vs.* WILLIAM J. HOLMES, administrator, & another.

WILLIAM J. HOLMES, administrator, *vs.* ALBERT A. SCHAEFER, administrator with the will annexed.

WILLIAM J. HOLMES, administrator, *vs.* ALBERT A. SCHAEFER, administrator with the will annexed.

Suffolk.   December 1, 1930. — December 3, 1931.

Present: RUGG, C.J., CARROLL, WAIT, & FIELD, JJ.

*Evidence*, Of survivorship, Presumptions and burden of proof.

Where a man, his wife and their adult daughter lost their lives in a common disaster as a result of the capsizing of a boat in which they were cruising, there was no presumption that any one of them survived any other, based on age, sex or physical condition, although such facts, so far as material, were to be considered in connection with the other circumstances of the disaster in determining the question of survivorship.

On all the evidence at a hearing in a probate court at which a stenographer was appointed under G. L. c. 215, § 18, as amended, this court on appeal *held*, that a conclusion by the judge of probate that the man above mentioned survived both his wife and his daughter could not be pronounced plainly wrong; and it therefore was proper to order

a distribution of his estate in such a manner as to exclude therefrom the representations of the estates of his wife and daughter, and to deny motions by the administrators of their estates to strike out the appearance of the man's personal representative in their estates.

THREE PETITIONS, filed in the Probate Court for the county of Suffolk, the first on January 15, 1930, and the second and third on April 4, 1930, described in the opinion.

The petitions were heard by *Dolan*, J., a stenographer having been appointed under G. L. c. 215, § 18, as amended. Decrees entered by order of the judge and material facts found by him under G. L. c. 215, § 11, upon appeals by William J. Holmes, administrator of the estates of Annie H. Currie and Dorothy Currie, are described in the opinion.

*J. E. Carroll*, for Schaefer, administrator.

*J. Noble*, (*S. Vaughan* with him,) for William J. Holmes, administrator.

*J. N. Clark*, for Eva Currie Joy and others.

FIELD, J.    Frederick T. Currie, his wife, Annie H. Currie, and their only child, Dorothy Currie, then about twenty-four years of age, all of Boston, lost their lives in a common disaster as a result of the capsizing of a power boat, the "Pirate," in which they were cruising. In the settlement of their estates the order in which they died was important and that question was raised by three petitions in the Probate Court — a petition by the administrator with the will annexed of the estate of Mr. Currie for partial distribution, a petition by William J. Holmes as administrator of the estate of Mrs. Currie to strike from the record in her estate the appearance of the administrator with the will annexed of the estate of her husband, and a petition by said Holmes as administrator of the estate of Dorothy Currie to strike from the record in her estate the appearance of the administrator with the will annexed of the estate of her father. On the petition for partial distribution of the estate of Mr. Currie a decree was entered ordering distribution and excluding therefrom the wife and daughter of the deceased. On the other petitions decrees reciting in each case that Annie H. Currie and Dorothy Currie died simultaneously in a common disaster and that both of them pre-

deceased Frederick T. Currie, and dismissing the petitions, were entered. The administrator of the estate of Annie H. Currie appealed from the decree of partial distribution and from the decree dismissing his petition, and the administrator of the estate of Dorothy Currie appealed from the decree of partial distribution and from the decree dismissing his petition. The probate judge made a report of the material facts in which he stated that on all the evidence he found that Mr. Currie survived his wife and daughter. The evidence is reported.

No error is disclosed. The decrees followed necessarily from the finding that Mr. Currie survived his wife and daughter and this finding, since not plainly wrong in the light of other findings and of the evidence reported, must stand. *Ball* v. *Hopkins*, 268 Mass. 260, 265. *Collis* v. *Walker*, 272 Mass. 46, 47.

In each of these proceedings survivorship was a fact to be proved by direct evidence or by inference from the circumstances of the disaster. There was no presumption that any victim of the disaster survived any other, based on age, sex or physical condition, though such facts, so far as material, were to be considered in connection with the other circumstances of the disaster. *Coye* v. *Leach*, 8 Met. 371. *Robson* v. *Lyford*, 228 Mass. 318, 327. *Young Women's Christian Home* v. *French*, 187 U. S. 401, 410. Wigmore on Ev. (2d ed.), § 2532, and cases cited. See also *Fuller* v. *Linzee*, 135 Mass. 468.

The "Pirate" set out from Marblehead Harbor for Boston at about four o'clock in the afternoon of July 4, 1928, with five persons on board — Mr. and Mrs. Currie, Dorothy Currie, Albert E. Morris, and his sister, Margaret Morris. A violent storm arose between four o'clock and half past four when the boat was in the open sea. The wind, blowing a full gale, came off shore, striking the boat on its starboard side. It rained hard. Mr. Currie was at the wheel and the others went down into the cabin. The boat listed to port, and Mr. and Miss Morris came on deck and jumped overboard on that side. Then the boat capsized, turning completely over. The dead bodies of Mr. and Mrs. Currie were

found near the boat and that of Dorothy Currie was washed
ashore several days later.   Miss Morris testified that after
the boat capsized she saw Mr. Currie struggling in the water.
There was no evidence that either Mrs. Currie or Dorothy
Currie was seen alive or heard by any one after Mr. and Miss
Morris jumped overboard.

It is not disputed that Mr. Currie was alive and struggling
in the water after the boat capsized.   Furthermore, the
evidence amply warranted the findings of the judge that
Mr. Currie "was an average swimmer, one who could keep
afloat at least half an hour," that when he was seen strug-
gling in the water he had his slicker on, that when his body
was found, at least one and one half hours after the boat
capsized, he had no slicker on, and that it was difficult for
a person in the water to remove a slicker.   These findings
warranted the judge's inference that Mr. Currie lived long
enough after the boat capsized to do this difficult thing.
Miss Morris testified that as Mr. Currie was struggling in
the water he was in contact with the rail of the overturned
boat and appeared to be making a conscious effort to get
under the boat.   There was evidence that when his body
was found floating near the overturned boat one leg was
tied to the gangway stanchion on the starboard side of the
boat by a line three or four feet long fastened with a half-
hitch, and that this line was not long enough to have been
so tied when he was at the wheel.   The judge inferred from
this evidence and from evidence relating to Mrs. Currie,
hereinafter referred to, that Mr. Currie "was trying to get
under the Pirate to save his wife," that after the "Pirate"
capsized he lived long enough, not only to take off his
slicker, but also "to tie a half-hitch in the strand of rope.
about the gangway stanchion and his leg," and that he
"thus secured himself that he might renew his efforts to
release Mrs. Currie and not be washed away by the heavy
sea."   Despite the arguments as to the difficulty and un-
wisdom of his so tying himself to the stanchion, we cannot
say that these inferences were plainly wrong.

The conclusion that Mr. Currie survived his wife was not
plainly wrong.   The representative of her estate contends

that she was in the cabin when the boat capsized, and that since the boat turned over quickly so that considerable breathable air remained in the cabin she lived therein a much longer time than Mr. Currie was shown to have lived in the open sea. It is undisputed that Mrs. Currie's body was found the day after the disaster with one arm crooked around the stanchion on the starboard side of the boat next to the gangway stanchion. The judge found that Mrs. Currie followed Miss Morris out of the cabin and inferred "that with the Pirate listing to port and about to capsize . . . [Mrs. Currie] being unable to swim . . . sought the high point of the deck on the starboard side, out of water for the time," and that "on emerging from the cabin and seeking the high point she was thrown or fell to the deck and clasped the stanchion . . . drowning in that position shortly after the cruiser capsized." There was evidence that just before the boat capsized Mr. Currie was standing at the wheel facing the companionway, leading to the cabin, that the other four persons were in the cabin standing, by his direction, on the starboard side, that Mr. Morris stood nearest the companionway with Miss Morris next, then Mrs. Currie, and Dorothy Currie last, and that Mr. Currie called to them to come on deck and Mrs. Currie also said "to get out." Miss Morris testified that her brother was the first to go through the companionway, that she followed immediately after him, and that she could feel that "there was someone brushing close behind" her as she went on deck. This testimony, and the evidence of the situation of Mrs. Currie's body when found, support the conclusion that Mrs. Currie reached the deck and clasped the stanchion before the boat capsized, and this conclusion is not necessarily overthrown by the evidence of the difficulty of her climbing the steps in the companionway and reaching the starboard side of the deck as the boat was listing heavily to port, or by the evidence that the Morrises, when in the water, and the man who removed Mr. Currie's body from the water, when doing so, did not see Mrs. Currie living or dead. If Mrs. Currie was clasping the stanchion when the boat capsized it follows irresistibly that she was drowned

almost immediately thereafter and before her husband was drowned. Even if, contrary to the finding of the judge, she had not left the cabin when the boat capsized, the case for her having survived her husband is no stronger than that for her daughter's having survived him.

The conclusion that Mr. Currie survived his daughter was not plainly wrong. The judge found that "Mrs. Currie and Dorothy were drowned simultaneously," and stated that he was "not satisfied that . . . [Dorothy] emerged from the cabin before the Pirate capsized." There was no evidence whatever that she reached the deck before the boat capsized and it was a warrantable inference from her position in the cabin, and from the rapidity with which the boat capsized, that she did not do so. There was testimony from which it could have been found that there was enough breathable air in the cabin after the boat capsized to sustain the life of one or two persons for a much longer time than Mr. Currie lived. There was testimony, also, that it would be "possible" for a person to preserve his life for some length of time in the cabin after the boat capsized. As, however, according to the evidence, it would be necessary for such person to reach and maintain a position on the underside of the cabin roof — then upturned — in water over three feet deep, in a cabin less than ten feet wide and less than seven feet long, with fixed seats on each side and a table in the center filling a considerable part of the area, it is apparent that a finding that Dorothy Currie survived the capsizing of the boat was not required, or even warranted. We think, moreover, that on the evidence the judge was justified in concluding that it was more probable that she did not survive the capsizing of the boat than that she did, and consequently was warranted in finding affirmatively that her father outlived her. Such an affirmative finding was not necessarily precluded by the evidence that it was possible that a person might have remained alive in the cabin after the boat capsized. *Navien* v. *Cohen,* 268 Mass. 427.

So far as, in these proceedings, there was a burden of proving that either Mrs. Currie or her daughter survived Mr. Currie, it is clear that it was not sustained, but, so far as

there was a burden of proving that Mr. Currie survived both his wife and his daughter, we cannot say that the evidence did not furnish sufficient basis for the conclusion that it was sustained. Discussion of the rule governing the burden of proof in each of these proceedings is, therefore, unnecessary.

We treat questions relating to the conduct of the trial not briefed or argued by the appellants as waived.

The decree on the petition for distribution is to be modified by awarding to the appellants costs and expenses of the appeal, determined by the Probate Court, to be paid out of the estate of Frederick T. Currie, and thus modified is affirmed. The other decrees are affirmed.

*Ordered accordingly.*