PORTER SARGENT *vs.* MASSACHUSETTS ACCIDENT COMPANY.

Suffolk.     May 6, 27, 1940. — November 6, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Insurance*, Accident, Proof of loss. *Evidence*, Opinion: expert; Presumptions and burden of proof; Of death.

Whether one, attempting in a kayak loaded with supplies to descend a river in the Canadian wilderness containing a series of dangerous rapids, would be drowned was not within the common knowledge of jurors here, and expert opinion testimony was admissible on the question.

Merely that mathematically the chances are in favor of a proposition is not enough to establish it by a preponderance of the evidence; there must be actual belief from evidence that the proposition is more probably true.

Evidence warranted a finding that a young man, seen starting a journey alone in a kayak loaded with supplies down a river in the wilderness containing a series of dangerous rapids, who was never seen nor heard of again despite all practicable search for him, but whose paddle and part of whose kayak were later found in or on the bank of the river, died by involuntary drowning within the provisions of his accident insurance policy providing for a payment to a beneficiary in case of his death solely caused by accidental injury; and a proof of loss seasonably informing the insurer of all facts discovered concerning him could have been found sufficient within a requirement of the policy for proof "covering the occurrence, character and extent of the loss."

CONTRACT. Writ in the Superior Court dated February 24, 1936.

A verdict for the defendant was ordered by *Walsh, J.,* who reported the action.

*M. E. Gallagher, Jr.,* (*W. P. Everts* with him,) for the plaintiff.

*C. G. Keene & F. X. Hurley,* for the defendant, submitted a brief.

LUMMUS, J. This is an action by the beneficiary of an accident insurance policy to recover the amount of $5,000, which was to be paid if the insured should suffer an accidental injury "that is the sole cause of death" resulting within ninety days after the accidental injury, disease not being a contributory cause of the accidental injury or death. The insured was the plaintiff's son, Upham Sargent, a young man of twenty-one, financially comfortable, mentally well-balanced, vigorous, athletic, resourceful, courageous, a good swimmer, and of some experience in living in wild country without provisions. For some years he had taken hazardous and adventurous journeys alone, in this country and in Europe.

Apart from one question of evidence, and another of formal proof of loss, the only question in this case is whether the circumstantial evidence warranted a finding that Upham Sargent met his death by accidental injury within the terms of the policy. The judge directed a verdict for the defend-

ant, and reported the case with the stipulation that if there was error in the direction of the verdict, judgment is to be entered for the plaintiff for $5,000 with interest from February 24, 1936, the date of the writ.

The evidence warranted a finding of the following facts. The insured travelled with a kayak, not as deep as a canoe, eighteen feet long. He took a train from La Tuque to Senneterre on August 23, 1934, stayed at Senneterre until August 28, and later reached Mattagami Lake at the head of the Nottaway River. His intention was to run down that river in his kayak, in a northwesterly direction, into James Bay, and to go to a trading post of the Hudson's Bay Company on James Bay, called Rupert's House. He had with him a small repeating rifle with ammunition, a sleeping robe, matches, $80 in money, snares and fishing tackle, and a good supply of food. He was not clothed for winter weather.

The northern reaches of the river, near its mouth, lie in a reservation for friendly and hospitable Indians, who live by trapping, and sell the skins at Rupert's House. The Indians, equally friendly and hospitable, who live near Mattagami Lake, apparently trade at Senneterre, to the south. The river varies from a fifth to a half mile in width, and consists of a series of dangerous rapids among large boulders. The river falls about seven hundred feet in its course. The only possible channel through rapids is usually near one bank or the other, and in that river if one should not find the channel he could not cross to the other side. An upset in that river would probably mean death. Even the best canoemen would find that river very hazardous. Only three parties are known to have descended it safely. The customary route from Mattagami Lake to Rupert's House is much longer, and avoids the Nottaway River.

There are no portages, roads, trails or paths in the country drained by the river. That country is flat, desolate and unforested, with many swamps, and with no elevations of consequence. Fish and blueberries are plentiful, and there are some ducks and rabbits.

The insured was last seen by Indians on September 8, 1934, as he was leaving Lake Mattagami with the intention of going down the Nottaway River. In October, 1934, an Indian found his paddle on the bank of the Nottaway River, on the fringe of a whirlpool, fifty or sixty miles from the mouth. In May, 1935, another Indian found a part of his kayak under some rocks in the river, forty miles from its mouth. A senior geologist in the service of the Canadian government, who had prepared many topographical surveys, including the "Nottaway Sheet" of the geological survey of Canada, testified. He had never travelled through the rapids of the Nottaway River, but from his studies and work he had acquired a general knowledge of the character of the river and the region through which it flowed. He himself had descended in a canoe the rapids of another river a little north of the Nottaway River. Subject to the exception of the defendant, he was allowed to give his opinion that an individual in a kayak loaded with supplies could not descend the Nottaway River without being drowned. The defendant argues that the subject is one within common knowledge, on which opinion is inadmissible because the jury need no help. But whether a certain kind of boat managed by one man and carrying a load can live in quick water of great power flowing among boulders in a river unknown to the jury is hardly within the common knowledge of the average jury in this Commonwealth. See *Jackson* v. *Anthony*, 282 Mass. 540, 544. It could have been found that the kayak was in fact loaded with supplies. There was no error in admitting the opinion of the geologist. He testified, however, that it was possible that in an upset the insured lost his kayak and all his equipment, reached the shore safely, but eventually starved to death. But there was evidence that there were plenty of blueberries at the time, on which one could live for a month.

Every practicable search for the insured was promptly made, beginning about the middle of October, through the Royal Canadian Mounted Police, the Hudson's Bay Company, Revillon Freres, Ltd., the Indians of the neighborhood, and other persons in the north country. An airplane

flight was made in February, 1935, over the northern reaches of the Nottaway River, in the hope of sighting the insured or his body. No further news of the insured has ever been had.

The burden of proof that is on the plaintiff in this case does not require him to establish beyond all doubt, or beyond a reasonable doubt, that the insured died from accidental injury within the policy. He must prove that by a preponderance of the evidence. It has been held not enough that mathematically the chances somewhat favor a proposition to be proved; for example, the fact that colored automobiles made in the current year outnumber black ones would not warrant a finding that an undescribed automobile of the current year is colored and not black, nor would the fact that only a minority of men die of cancer warrant a finding that a particular man did not die of cancer. *Haskins* v. *Haskins,* 9 Gray, 390. *Callahan* v. *Fleischman Co.* 262 Mass. 437. *Day* v. *Boston & Maine Railroad,* 96 Maine, 207, 217, 218. *Creamery Package Manuf. Co.* v. *Industrial Commission,* 211 Wis. 326. *Virginia & South Western Railway* v. *Hawk,* 160 Fed. 348, 352. *Toledo, St. Louis & Western Railroad* v. *Howe,* 191 Fed. 776, 782. Compare *Commonwealth* v. *Clark,* 292 Mass. 409, 415. The weight or ponderance of evidence is its power to convince the tribunal which has the determination of the fact, of the actual truth of the proposition to be proved. After the evidence has been weighed, that proposition is proved by a preponderance of the evidence if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal notwithstanding any doubts that may still linger there. *Young* v. *New York, New Haven & Hartford Railroad,* 273 Mass. 567, 570. *Marlow* v. *Dike,* 269 Mass. 38, 40. *Schaefer* v. *Holmes,* 277 Mass. 468. *Koczur* v. *Flanagan,* 306 Mass. 121, 123–124. *O'Connor* v. *Griff, ante,* 120. *Dunbar* v. *McGill,* 64 Mich. 676, 683. *Hoyt* v. *Danbury,* 69 Conn. 341, 348. *Pullman Palace Car Co.* v. *Adams,* 120 Ala. 581, 599. *Livanovitch* v. *Livanovitch,* 99 Vt. 327.

Upon the evidence, in the opinion of a majority of the court, a jury could find, not merely that there was a greater chance that the insured met his death by accident falling within the policy than that he met a different fate, but that death by accident within the policy was in fact indicated by a preponderance of the evidence.

The jury might find upon the evidence that he died by drowning, either at the time of an accident that wrecked his kayak or later in an attempt to salvage his equipment or supplies from the river. *Fidelity Mutual Life Association* v. *Mettler*, 185 U. S. 308, 316 (see *Fidelity Mutual Life Ins. Co.* v. *Clark*, 203 U. S. 64, 72). *Brownlee* v. *Mutual Benefit Health & Accident Association*, 29 Fed. (2d) 71. *Occidental Life Ins. Co.* v. *Thomas*, 107 Fed. (2d) 876.

In the opinion of a majority of the court, this is not a case where this court can say that the evidence tended equally to support two inconsistent propositions as to what happened, and consequently that neither can be found to be true. *Smith* v. *First National Bank in Westfield*, 99 Mass. 605, 612. *Crowell* v. *Moley*, 188 Mass. 116, 119. *Hanna* v. *Shaw*, 244 Mass. 57, 60. *Willett* v. *Herrick*, 258 Mass. 585, 600. *Walker* v. *Benz Kid Co.* 279 Mass. 533, 537. *De-Filippo's Case*, 284 Mass. 531, 534. *Allicia* v. *Boston, Revere Beach & Lynn Railroad*, 294 Mass. 488, 490. *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400. *Brown* v. *Bangs*, 306 Mass. 551. *Pennsylvania Railroad* v. *Chamberlain*, 288 U. S. 333, 339. Death by involuntary drowning would fall plainly within the policy. *Lewis* v. *Brotherhood Accident Co.* 194 Mass. 1, 6, 7. *Silva* v. *Fidelity & Casualty Co.* 252 Mass. 328, 330. It could have been found that the death of the insured occurred within the period of ninety days mentioned in the policy. Whether other possible theories of his death would have made out a case within the terms of the policy, need not be considered.

The defendant, not questioning the timeliness of the proof of loss furnished by the plaintiff, argues that it was insufficient. The policy requires "written proof covering the occurrence, character and extent of the loss for which claim is made." The argument of the defendant on this point is

a repetition of its argument upon the question whether there was evidence warranting a finding that the insured met his death by accident within the policy. It is not contended that the plaintiff did not keep the defendant informed in writing as to all the facts discovered. In the opinion of a majority of the court the proof of loss could have been found sufficient.

In accordance with the terms of the report, the directed verdict for the defendant is set aside, and judgment is to be entered for the plaintiff in the amount of $5,000, plus interest from the date of the writ, and costs.

*So ordered.*