HELEN J. STEPAKOFF, executrix, vs. WILLIAM G. KANTAR.

Middlesex.   October 5, 1984. — February 5, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Negligence,* Psychiatrist.  *Medical Malpractice,* Standard of care. *Practice, Civil,* Instructions to jury, Presumptions and burden of proof.

A plaintiff's objections to instructions to the jury, referring to requested instructions by number only, were sufficient to preserve the issues for appeal, where the trial judge had asked counsel to object by number and had assured counsel that he understood the objections. [839-840]

At the trial of a malpractice action against a psychiatrist arising from the suicide of the plaintiff's husband, in which the judge had correctly instructed the jury concerning the defendant's general medical malpractice duty to exercise the care and skill of the average psychiatrist, the judge did not err in refusing the plaintiff's request to instruct the jury that if, under the general malpractice standard, the defendant knew or should have known that the plaintiff's decedent presented a serious danger to himself, the defendant owed him a specific legal duty to safeguard him from that danger, or to use reasonable care to do so. [840-842]

At the trial of a malpractice action against a psychiatrist brought by a plaintiff whose husband had been a patient of the defendant and had committed suicide, the judge did not err in refusing to instruct the jury respecting a psychiatrist's statutory authority to hospitalize a patient against the patient's will, where testimony of expert witnesses had informed the jury that State law gave a psychiatrist the authority to hospitalize a patient against his will if certain conditions were met, and where the requested instructions would not have helped the jury resolve the question before it, whether these conditions had been met in the instant case. [842]

At the trial of a malpractice action against a psychiatrist brought by a plaintiff whose husband had been a patient of the defendant and had committed suicide, the judge's instructions to the jury, quoting from *Sargent* v. *Massachusetts Accident Co.,* 307 Mass. 246, 250 (1940), adequately explained to the jury the plaintiff's burden of proof. [842-843]

CIVIL ACTION commenced in the Superior Court on February 13, 1978.

The case was tried before *Herbert Abrams,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Edward P. Leibensperger (Eric I. Lisman* with him) for the plaintiff.

*Laurence J. Bloom* for the defendant.

O'CONNOR, J. Helen J. Stepakoff, widow of Gerald Stepakoff (Stepakoff) and executrix of his estate, brought this action in the Superior Court against William G. Kantar, Stepakoff's psychiatrist. The plaintiff alleged that, although the defendant either knew or reasonably should have known that Stepakoff was suicidal, he negligently failed to inform her of that fact or to make appropriate arrangements for Stepakoff's protection, as a result of which Stepakoff committed suicide. The plaintiff seeks damages for Stepakoff's conscious suffering and wrongful death.

The case was tried to a jury. The trial judge directed a verdict for the defendant on the claim for conscious suffering, and the jury found for the defendant on the claim for wrongful death. Judgment was entered, and the plaintiff appealed. We transferred the appeal to this court on our own motion.

The plaintiff argues that the judge erred by refusing to instruct the jury that a psychiatrist who knows or reasonably should know that his patient is likely to harm himself has a duty to take reasonable precautions to prevent such harm, and by refusing to instruct the jury regarding a psychiatrist's statutory authority to hospitalize a patient involuntarily. The plaintiff also claims that the judge improperly instructed the jury concerning the burden of proof, and that he erroneously directed a verdict for the defendant on the claim for conscious suffering. We conclude that the judge did not commit reversible error, and we affirm the judgment for the defendant.

The jury could have found the following facts. Stepakoff began to see the defendant in November of 1973, and the two established a relationship as psychiatrist and patient that lasted until Stepakoff's death on or about February 16, 1975. The defendant diagnosed Stepakoff as a manic-depressive psychotic, and he formed the opinion that Stepakoff was "potentially

suicidal." The defendant thought, however, that Stepakoff had a defense mechanism that rendered him less able to take decisive action as his predicament worsened. Furthermore, the defendant thought that he had a "solid pact" with Stepakoff that Stepakoff would contact him if Stepakoff felt suicidal.

During 1974 and early 1975, the plaintiff and Stepakoff had marital difficulties. On February 13, 1975, the plaintiff went to Florida. Before going, she told Stepakoff to be out of the house when she returned. She telephoned the defendant to express her concern about the situation, but he assured her that she should feel free to go.

The defendant planned to spend the weekend that began on Saturday, February 15, in Maine. Before his departure, he prepared Stepakoff for his absence. He gave Stepakoff the name and telephone number of another psychiatrist who had agreed to cover for him. He developed with Stepakoff a plan for the weekend, and he told Stepakoff that he would call him each night that he remained away. On Friday, February 14, the defendant and Stepakoff had an "emergency" meeting. During that meeting, the defendant considered involuntarily hospitalizing Stepakoff, but decided against it. After the meeting, he dictated a note for his files that included the following sentence: "There is a question of whether he will make it over the weekend."[1] The defendant also called the covering psychiatrist and described Stepakoff's situation.

On Saturday, February 15, Stepakoff called the covering psychiatrist, and the two met. Stepakoff reassured the doctor that he did not intend to commit suicide. That night, as planned, the defendant called Stepakoff. Based on that conversation, the defendant formed a favorable diagnostic impression of Stepakoff's condition. The defendant hung up after agreeing

---

[1] At trial, the defendant testified that when he used those words he meant: "Whether he would be able to carry out the activities that he and I outlined, or whether the type of thing that happened to him just preceding his psychiatric admission to Newton-Wellesley [in 1974] would occur, in which he seemed to be paralyzed in his capacities to function, to — at that time, he couldn't get up out of the chair in my office and drive his car home. And it was that type of regression and inability to function that I was questioning."

with Stepakoff that they would talk again the next night, but on Sunday, February 16, the police found Stepakoff in his garage, dead from carbon monoxide inhalation.

The jury heard the testimony of two psychiatrists. One of them expressed the opinion that the defendant's treatment of Stepakoff did not conform to good medical practice. He testified that the defendant should have involuntarily hospitalized Stepakoff. The other disagreed. In his opinion, Stepakoff did not meet the requirements for involuntary hospitalization set forth in G. L. c. 123, § 12. Over the plaintiff's objection, the judge allowed the witness to testify as to what those requirements were.

1. *Instructions as to the Defendant's Duty.*

The plaintiff argues that the trial judge committed reversible error by failing to give the jury her requested instructions, numbered 10, 11, and 12, regarding a psychiatrist's duty to his patient. We reprint those requested instructions in the margin.[2] After the judge's charge, the plaintiff objected, by number, to the judge's failure to give those instructions. The defendant contends that, by objecting in that form, the plaintiff failed to preserve for appeal those assignments of error. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

Ordinarily, mere blanket enumeration by number of allegedly ignored requests will not suffice. See *Miller* v. *Boston & Me. Corp.,* 8 Mass. App. Ct. 770, 773-774 (1979); *Charles A. Wright, Inc.* v. *F.D. Rich Co.,* 354 F.2d 710, 713 (1st Cir.), cert. denied, 384 U.S. 960 (1966). However, in this case the trial judge asked counsel to object by number and

---

[2] "10.   A treating psychiatrist owes to his patient a duty to safeguard the patient from danger due to mental incapacity where that incapacity is known, or ought to have been known, to the psychiatrist through the exercise of ordinary care. . . .

"11.   If Dr. Kantar knew of facts from which he could have reasonably thought that the patient was likely to harm himself in the absence of protective measures, then Dr. Kantar had a duty to use reasonable care under the circumstances to prevent such harm and to safeguard the patient from self-inflicted injury or death. . . .

"12.   This duty is proportionate to the patient's needs, that is, such reasonable care and attention as the patient's known mental condition requires. . . ." (Citations omitted.)

assured counsel that he understood counsel's objection and that counsel need make no further presentation. In those circumstances, the plaintiff's objections were properly preserved.

The plaintiff concedes that the judge correctly instructed the jury concerning the defendant's "general medical malpractice duty to exercise the care and skill of the average psychiatrist," but she contends that the judge should *also* have instructed the jury that if, under that general malpractice standard, the defendant knew or should have known that Stepakoff presented a serious danger to himself, the defendant owed Stepakoff a specific legal duty to safeguard him from that danger, or at least to use reasonable care to do so. We will assume that requests 10, 11, and 12 fairly presented that instruction to the judge, but we conclude that the judge correctly refused to give it.

"Negligence, without qualification and in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances." *Altman* v. *Aronson,* 231 Mass. 588, 591 (1919). Negligence of a physician who practices a specialty consists of a failure to exercise the degree of care and skill of the average qualified physician practicing that specialty, taking into account the advances in the profession and the resources available to the physician. *Brune* v. *Belinkoff,* 354 Mass. 102, 109 (1968). The rule with respect to the physician-patient relationship is an adaption of the broader negligence principle. In the context of that relationship, the law views the care and skill commonly exercised by the average qualified physician as the equivalent of the "care, vigilance and forethought which . . . the person of ordinary caution and prudence ought to exercise under the particular circumstances." *Altman* v. *Aronson, supra.*

The judge instructed the jury: "[I]f you find that the care and treatment given by Dr. Kantar to Gerald Stepakoff from December of 1973 to February of 1975 was not in accordance with good medical practice and in violation or breach of the

standard of care and skill of the average member of the medical profession practicing his specialty of psychiatry between December '73 and February of 1975, and that, if as a direct and proximate result of that negligence, Gerald Stepakoff died, the plaintiff, Helen Stepakoff, would be entitled to recover . . . ." That instruction fully and accurately stated the law. The plaintiff was not entitled to further instructions relative to the reasonableness of the defendant's acts or failures to act. The plaintiff has not directed our attention to any case in which a court has bifurcated the duty owed by a psychiatrist to a suicidal patient by declaring that, when diagnosing a patient, the psychiatrist must exercise the care and skill customarily exercised by an average qualified psychiatrist, while, after diagnosing a patient as suicidal, the psychiatrist's duty to take preventive measures becomes one of "reasonableness." We are unwilling to disturb our longstanding rule that a physician, practicing a specialty, owes to his or her patient a duty to comply in all respects with the standard set by the average physician practicing that specialty.

We are not moved to a different conclusion by *Tarasoff* v. *Regents of the Univ. of Cal.*, 17 Cal. 3d 425, 439 (1976), in which the California Supreme Court imposed on psychiatrists a duty of reasonable care to foreseeable victims of the psychiatrists' patients. The instant case involves a psychiatrist's duty to his patient, not to third parties. In cases like this one, even California courts apply the "average qualified physician" standard. See *Bellah* v. *Greenson*, 81 Cal. App. 3d 614, 620 (1978) (from the complaint, the court was "unable to determine whether defendant did or did not take preventive steps which were consonant *with good medical practice* in the community" [emphasis added]).

Nor are we moved by cases from other jurisdictions cited by the plaintiff in support of the proposition that a hospital and its staff must exercise reasonable care for the safety of confined patients likely to harm themselves. Even if those cases support the proposition that hospitals must meet an ordinary negligence standard, as distinguished from a good medical practice standard, they do not persuade us that the duty owed

by a psychiatrist to a suicidal outpatient should differ from that imposed by this court on physicians to other patients.

2. *Instructions as to a Psychiatrist's Statutory Authority.*

The plaintiff argues that the judge committed reversible error by failing to give the jury her requested instructions, numbered 17 and 18, regarding a psychiatrist's statutory authority to hospitalize a patient involuntarily. We reprint the requested instructions in the margin.[3] The judge could properly have given the requested instructions because whether or not the defendant *could* lawfully have hospitalized Stepakoff against his will is relevant to whether he *should* have done so. However, the judge did not have to give the instructions. The testimony of the expert physician witnesses made clear to the jury that Massachusetts law empowers a psychiatrist to hospitalize a person involuntarily if that person is likely to harm himself seriously by reason of mental illness. The experts only disagreed on whether, at the relevant time, Stepakoff's condition met that requirement. An instruction by the judge as to the content of G. L. c. 123, § 12, would not have helped the jury to resolve that issue.

3. *Instructions as to Plaintiff's Burden of Proof.*

The judge instructed the jury that the plaintiff had the burden of proving all the essential elements of her case by a fair preponderance of the evidence. Quoting from *Sargent* v. *Massachusetts Accident Co.,* 307 Mass. 246, 250 (1940), he told the jury that "[t]he weight or preponderance of evidence is its power to convince the tribunal which has the determination of the facts, of the actual truth of the proposition to be proved. After the evidence has been weighed, that proposition is proved by a preponderance of the evidence if it is made to appear more

---

[3] "17. A person licensed to practice as a psychiatrist is empowered, under Massachusetts law, to require the hospitalization of a patient under circumstances where there is a likelihood of serious harm by reason of the patient's mental illness. M. G. L. c. 123, § 12.

"18. A psychiatrist, who after examining a person has reason to believe that failure to hospitalize that person would create a likelihood of serious harm, may restrain or authorize the involuntary restraint of such person and require the hospitalization of such person for a ten day period at a public or authorized private facility. M.G.L. c. 123, § 12."

likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal notwithstanding any doubts that may still linger there." The judge also stated: "Another description of the state of mind which is satisfied by a fair preponderance of the evidence is a firm and abiding conviction in the truth of the plaintiff's case. A third word picture of this burden of proof is a balance of probability in favor of the plaintiff." Later in his charge, the judge told the jury that the plaintiff had to prove "that her husband's death was more likely due to the negligence of the defendant than to some other cause for which he is not liable."

When we consider the charge as a whole, as we must, *Lockwood* v. *Boston Elevated Ry.*, 200 Mass. 537, 544 (1909), we conclude that it adequately explained to the jury the plaintiff's burden of proof. The plaintiff argues that the phrases "actual truth" and "actual belief in its truth" that the judge quoted from *Sargent, supra,* imply a greater degree of certainty than that required of a jury in a civil case. We have frequently, and recently, *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals,* 389 Mass. 705, 716 (1983), expressed our approval of the quoted language. We do so again.

Furthermore, although, as the plaintiff points out, we have rejected the "balance of probabilities" test as determining the verdict, *Callahan* v. *Fleischman Co.,* 262 Mass. 437, 437 (1928), we did so because we saw in it a dilution of the plaintiff's burden of proof — hardly something of which a plaintiff should complain. See *Haskins* v. *Haskins,* 9 Gray 390, 393 (1857).

4. *Direction of Verdict as to Conscious Suffering.*

What we have said to this point renders moot the plaintiff's challenge to the judge's direction of a verdict for the defendant on the claim for conscious suffering. General Laws c. 229, § 6, on which the plaintiff relies, allows recovery only for conscious suffering caused by a defendant's negligence. See *Gaudette* v. *Webb,* 362 Mass. 60, 62 (1972). The jury found that the defendant was not negligent, and we do not disturb that verdict. Therefore, it makes no difference whether there was evidence of conscious suffering.

*Judgment affirmed.*