COMMONWEALTH *vs.* ROBERT G. MASKELL.

Essex.  April 4, 1988. — August 1, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN & LYNCH, JJ.

*Homicide. Practice, Criminal*, Objections to jury instructions, Instructions
  to jury, Capital case.

A defendant charged with murder in the first degree properly preserved his
  objection to the judge's complete omission of a jury instruction on
  voluntary manslaughter. [114-115]
The failure of the judge at the trial of an indictment for first degree murder to
  instruct the jury on the lesser offense of voluntary manslaughter, which
  was warranted on the evidence, was reversible error. [115-117]
On reviewing under G. L. c. 278, § 33E, the record of a trial that resulted in
  a conviction of first degree murder, this court was of opinion that a
  verdict of manslaughter would be more consonant with justice. [117]
Where reversible error occurred in the trial of a first degree murder case
  and where a verdict of manslaughter would have been more consonant
  with justice in any event, this court, acting on a stipulation of the parties
  which was appropriate in the circumstances, exercised its discretionary
  power under G. L. c. 278, § 33E, to remand the case for entry of a
  verdict of guilty of manslaughter and resentencing rather than for a new
  trial. [117-118]

INDICTMENT found and returned in the Superior Court Department on May 21, 1986.

The case was tried before *John L. Murphy, Jr., J.*

*Thomas G. Shapiro* (*Charles W. Rankin* with him) for the defendant.

*Judith Fabricant*, Special Assistant District Attorney (*David W. Duncan*, Assistant District Attorney, with her) for the Commonwealth.

LIACOS, J. Convicted of murder in the first degree, the defendant brings this appeal pursuant to G. L. c. 278, § 33E (1986 ed.). The claims of error are addressed solely to the judge's charge to the jury. Should there be reversible error,

the parties have agreed that we should exercise our discretionary power under § 33E to reduce the defendant's conviction to manslaughter (G. L. c. 265, § 13 [1986 ed.]), rather than to remand for a new trial. We conclude that the failure of the judge to give an instruction on voluntary manslaughter constituted reversible error. We have reviewed the record. We conclude that the defendant's conviction should be reduced to one of manslaughter. Thus, it is unnecessary to consider the other alleged errors in the charge given by the judge to the jury.

The evidence in this case was conflicting. The prosecution's version of events was essentially as follows. On the morning of April 18, 1986, the defendant fired several shots at a dog belonging to the victim, Lawrence Sargent. The defendant previously had asked Sargent, a neighbor, to keep the dog away from the defendant's property. Across the street, members of Sargent's family heard the shots. When the dog returned, they observed a wound to its right hind leg. Sargent's wife informed him that the defendant had shot the dog. Sargent grabbed a single-barrel shotgun and loaded it with one shell of "double aught buckshot." The primary use for such buckshot is to hunt large game.

Sargent's wife urged him not to confront the defendant. In response, he stated, "He shot my dog. I'm going to shoot his." Rebuffing several efforts by his wife and others present to stop him, Sargent proceeded toward the defendant's house with the shotgun. The defendant was alerted to Sargent's approach by his companion, Barbara Greany. The defendant went into the garage attached to the house. He still carried the revolver with which the dog had been shot.

About seventy feet from the defendant's home, Sargent paced back and forth with his shotgun. He was cursing and yelling for the defendant to come out of the house. The defendant opened the garage door. A loud argument between the two men ensued. While the defendant was in the garage, Sargent fired the shotgun at the defendant. The buckshot pellets penetrated the defendant's left leg, as well as an automobile and other objects in the garage. The defendant returned the fire. Sargent was hit and fell to the ground.

According to the Commonwealth's evidence, Sargent's shotgun "flew away from him" to his right. He "crawled for cover" in the opposite direction. The defendant then came out of his garage. Limping down the driveway, he reached Sargent and "paused for a second." Sargent lay motionless on his back, with his hands "up in front of him." He said to the defendant, "Please, no." He then "hollered out, you F'er." The defendant "fired into [Sargent's] heart." After the shooting, the defendant walked back up the driveway, picked up Sargent's shotgun, and had Greany telephone the police.

The defendant's version of events differed in some significant respects. His main theory at trial was self-defense. The defendant testified that, after firing at Sargent's dog, he went to his garage to reload his revolver. He then placed the revolver in a box with its ammunition.[1] He heard somebody "yelling," and looked outside through the garage door windows. He saw Sargent with a shotgun, pacing in front of the house. The defendant picked up his revolver and went over to the garage door. He placed the revolver on a nearby shelf. Sargent was cursing profusely and yelling for the defendant to come out of the house. As Sargent came closer, appearing "pretty hysterical," the defendant became frightened.[2] He decided that Sargent should not come any nearer to the house. He opened the garage door to calm down Sargent, who replied, "[Y]ou shot my dog, I'm going to shoot yours, and I'm going to kill you." The defendant immediately reached for his revolver. Sargent fired, and the defendant felt pain in his leg and felt the automobile "shudder." The defendant instinctively returned fire on being shot.

The defendant testified that he looked out from the garage and saw Sargent ducking behind a large rock. He saw the shotgun barrel moving back and forth, but could not see Sar-

---

[1] The defendant explained that he always reloaded after using the revolver. He also testified that he was, at first, unconcerned on learning that Sargent was coming down the road with a shotgun, since many people in the area carried guns.

[2] The defendant testified that he believed that the shotgun blast could penetrate the glass and plywood garage door, or could go into the house.

gent. Frightened and concerned about continuing danger to Greany, he walked to the end of the driveway in order to get the shotgun.[3] There, he saw Sargent lying on the ground with the shotgun across his body. He yelled at Sargent to drop the shotgun. Sargent said, "You f'n asshole, you shot me." Sargent rolled over and fired once again. The defendant stated that he returned the fire while Sargent was turning. He grabbed the shotgun and threw it up the driveway, toward the house. The defendant then went into the house to have Greany telephone the police. He went back outside and waited beside the shotgun.

All these events occurred within a matter of a few minutes.

1. *Voluntary manslaughter instruction.* a. *Preservation of the objection.* The Commonwealth claims that the defendant failed to preserve properly his objection to the omission of an instruction on voluntary manslaughter.

The defendant had submitted a written list of requested instructions, including seven pertaining to voluntary manslaughter. Other requested instructions dealt with involuntary manslaughter on a theory of reckless conduct, and manslaughter arising from the use of excessive force in self-defense. Having reviewed the requests, the judge announced, prior to argument, that he would give no manslaughter instruction except as relating to the use of excessive force in self-defense. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966). The defendant objected, inter alia, to the announced intention not to charge on involuntary manslaughter by reckless conduct. After the charge was given, the defendant again objected to the omission of certain requested instructions. At this time, the defendant mainly referred to the numbers of the requested instructions in his objections. He made specific objections, however, to certain instructions. In addition, the defendant objected "to the omission to charge as to involuntary manslaughter"[4] and "to

---

[3] The defendant testified that, since he could not see Sargent, he figured that Sargent could not see him. Thus, he went down the driveway to get possession of the shotgun.

[4] The Commonwealth concedes that, in context, it is clear that, by his first reference, the defendant meant to refer to voluntary manslaughter.

the instruction as to the crime of involuntary manslaughter as the same [is], in my judgment, wholly incomplete."

A party must specify "the matter to which he objects and the grounds of his objection." Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979). "The purpose of this requirement in rule 24 (b) is to bring alleged errors or omissions to the attention of the judge at a time when they still can be corrected, and thereby avoid the necessity of a new trial to correct an error which could have been eliminated before the jury began their deliberations." *Commonwealth* v. *Keevan*, 400 Mass. 557, 563 (1987). Blanket reference by number to requested instructions ordinarily is an insufficient form of objection. *Stepakoff* v. *Kantar*, 393 Mass. 836, 839 (1985). This is not an inflexible rule, however. See, e.g., *id.* at 839-840 (sufficient where trial judge asked counsel to object by number); *Commonwealth* v. *Martin*, 369 Mass. 640, 645-646 (1976) (objection by number sufficed where judge probably looked at the requests during objection). In this case, as in *Martin*, "[t]he judge's failure to charge on the matter . . . appears not to be a consequence of the defendant's failure to inform him of error in the charge, but rather to be traceable . . . to the judge's view of the governing law." *Id.* Thus, the case at bar is distinguishable from those instances where blanket numerical references constituted a general objection to the instructions in their entirety. See *Commonwealth* v. *Keevan*, *supra* at 564; *Commonwealth* v. *McColl*, 375 Mass. 316, 320 (1978). Here, the defendant's specific reference to the complete omission of a voluntary manslaughter instruction, combined with a numerical reference to the requested charge, was sufficient to alert the judge to the existence of a substantive problem. The defendant's objection was properly preserved.

b. *The necessity of a charge.* It is a long-established "proposition that where evidence in a murder prosecution is such that a jury could find the defendant[ ] guilty of manslaughter rather than murder it is *reversible error* to refuse to give such an instruction on manslaughter" (emphasis added). *Commonwealth* v. *Campbell*, 352 Mass. 387, 392 (1967), and cases cited. It is the province of the jury, and not that of the judge, to

weigh any conflicting evidence. *Commonwealth* v. *Schnopps*, 383 Mass. 178, 181 (1981), *S.C.*, 390 Mass. 722 (1984). *Commonwealth* v. *Campbell*, *supra* at 398. As given, the charge on manslaughter precluded the jury from considering, as a lesser offense, the crime of voluntary manslaughter, namely, "a killing committed in 'a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat.' *Commonwealth* v. *Hicks*, 356 Mass. 442, 445 (1969), quoting *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931)." *Commonwealth* v. *McLeod*, 394 Mass. 727, 738, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985).[5]

"In deciding whether the judge should have charged on manslaughter, we assume the version of the facts most favorable to the defendant." *Commonwealth* v. *Schnopps*, *supra* at 179. *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 746 (1975). *Commonwealth* v. *Campbell*, *supra*. Here, there was evidence that Sargent, in an agitated state, brandished a shotgun outside the defendant's home. Angry words between the two men ensued. Sargent was first to fire, hitting the defendant in the leg with "double aught buckshot." There was evidence that the defendant suffered a severe wound, that he was frightened, and that he was in deadly fear as a result of the sudden combat initiated by Sargent. We have recognized that a single blow, or the initiation of sudden combat, may be adequate provocation

---

[5] The judge instructed on manslaughter only as follows: "I told you before that manslaughter was included and we call it a lesser-included offense. Manslaughter is a crime within the definition of murder but, because of certain mitigating or extenuating circumstances, we call it manslaughter rather than murder. Manslaughter is the unlawful killing of one person by another without malice aforethought. The element, the absence of the element of malice aforethought is the primary distinction between murder and manslaughter."

The judge then charged that, in this case, only excessive use of force in self-defense could reduce murder to manslaughter. This instruction did not cover manslaughter due to reasonable provocation, which is an entirely distinct offense. See *Commonwealth* v. *Greene*, 372 Mass. 517, 521-522 (1977), where we stated that, "when there is some evidence of provocation, the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion." *Id.* at 519.

to reduce a homicide from murder to manslaughter. *Commonwealth* v. *Weaver*, 395 Mass. 307, 312 (1985) (single blow *or* sudden combat). The lapse of time was brief. See *Commonwealth* v. *McLeod, supra* (time must be sufficiently short so that defendant, if provoked, did not "cool off," and a reasonable person would not have cooled off). In less than one minute,[6] the first shot was fired, and the defendant walked down the driveway and shot Sargent. There was evidence that the defendant was frightened and in excruciating pain from his wound. See *Commonwealth* v. *Walden*, 380 Mass. 724, 728 (1980) (state of mind required may be passion, anger, fear, fright, or nervous excitement). We conclude that, on the evidence in this case, it was reversible error for the judge not to have charged on voluntary manslaughter.

2. *Section 33E considerations.* Having in mind our duty to review the record as a whole, we are persuaded that a verdict of manslaughter would be "more consonant with justice" than a verdict of murder. *Commonwealth* v. *Seit*, 373 Mass. 83, 94 (1977). *Commonwealth* v. *Baker*, 346 Mass. 107, 109 (1963). We reach this conclusion independent of the agreement of the parties.

Here, a minor altercation over a dog escalated tragically and rapidly into a shooting match. The defendant is not blameless. Nor was Sargent blameless when, in an agitated state, he trained his shotgun on the defendant's house and fired at the defendant. Within only moments after he fired the shot, he was killed.

The entire sequence of events exemplifies the tragedy of "a minor controversy . . . explod[ing] into the killing of a human being." *Commonwealth* v. *Keough*, 385 Mass. 314, 320 (1982). *Commonwealth* v. *Baker, supra* at 110. These are circumstances that previously have led to the exercise of our § 33E power. See *Keough, supra* at 321; *Baker, supra* at 122. In this light, we think the stipulation of the parties is appropriate. A new trial is not warranted. We remand for entry of a

---

[6] The defendant contends that all of the shots were fired within a few seconds of each other. The Commonwealth's evidence indicates that the shootings took place within, at most, two to three minutes.

verdict of guilty of manslaughter and for resentencing. See *Commonwealth* v. *Lennon*, 399 Mass. 443, 449 (1987).

Accordingly, the case is remanded to the Superior Court, where the verdict and sentence shall be vacated. A verdict of guilty of manslaughter shall be entered, and sentence imposed thereon.

*So ordered.*