Burnes, J.
INTRODUCTION
This case arises out of the claim by the plaintiff Virginia Taylor (“Mrs. Taylor”) of medical malpractice against a podiatrist, Dr. Stephen B. Arbetter (“Dr. Arbetter"), as a result of surgery to Mrs. Taylor’s left foot. The complaint was filed on April 10, 1998. Dr. Arbetter was properly served on May 4, 1998, but did not appear or answer. He was defaulted on July 22, 1998. This matter is before me on a motion for assessment of damages and entry of default judgment. After hearing testimony from Mrs. Taylor and reviewing the evidence, the Court finds and rules as follows:
FINDINGS OF FACT
1. Mrs. Taylor was born on February 23, 1940 and is today 58 years old. She lives in Hopedale, Massachusetts with her husband, Robert.
2. In May 1996, Mrs. Taylor went to Dr. Arbetter for a problem with her left foot. Dr. Arbetter recommended that she undergo surgery in his office, assuring Mrs. Taylor she would be back to work a week after surgery.
3. On June 28, 1996, Dr. Arbetter performed a minimal incision osteotomy of the left first metatarsalphalangeal joint for correction of a hallux abducto valgus deformity at his office. Dr. Arbetter repeatedly injected the foot to anesthetize it. The procedure took several hours to perform. Mrs. Taylor was discharged with a wrapped foot and was instructed to use an ice water boot, was provided a black strapped boot, and was told to return in a week.
4. Mrs. Taylor experienced great pain and considerable swelling at home. When she returned to Dr. Arbetter, he told her to continue using the ice water boot for one half hour every two hours.
5. When her foot was unwrapped during her visit, Mrs. Taylor saw that her foot was not only swollen but was also deformed, with the big toe bent so that the distal phalange was pointed at the ground.
6. In the weeks following, Mrs. Taylor experienced persistent pain, a progressive contracture at the metatarsal-phalangeal joint and the inter-phalangeal joint of the left big toe. She was unable to wear shoes or to walk without pain. No improvement resulted from injections or a plastazote type orthosis.
7. Mrs. Taylor returned to her work as an executive assistant after two weeks, but did so with her ice boot and a cooler full of ice water. She continued to use the boot at work and at home every two hours throughout her employment in 1996.
8. Mrs. Taylor’s foot did not improve during July or August. On September 11, 1996 she left on a scheduled trip for her daughter’s wedding in Hawaii. The trip was ruined. Mrs. Taylor had to use a wheelchair in the airports and to use the ice water boot during her eleven-hour flights both ways. She was almost unable to leave the hotel while in Hawaii, and was able to attend her daughter’s beach wedding only with great discomfort and pain. The trip cost $6,000.00.
9. Mrs. Taylor returned to Dr. Arbetter when she got back from Hawaii. She continued under his care *516 until November 1996, but remained unimproved under this care.
10. Mrs. Taylor sought care elsewhere and was referred by her primary care physician to Anthony Teebagy, M.D. at University of Massachusetts Medical Center. Dr. Teebagy told Mrs. Taylor her condition might be improved with surgexy. In December 1996, Mrs. Taylor’s employer moved out of state and she was, due to her circumstances, disabled from other employment.
11. In the spring of 1997, Mrs. Taylor was referred for a second opinion to Richard W. Cullen, D.P.M. of Sports Medicine Brookline. Dr. Cullen saw Mrs. Taylor on May 8, 1997. She brought a pre-operative radio-graph dated June 28, 1996 and a treatment summation from Dr. Arbetter.
12. Dr. Cullen found that Mrs. Taylor exhibited a limited and painful range of motion in her left big toe, which was in an elevated and fixed position. Dr. Cullen could not lower the toe to its normal anatomical position. He noted IPJ contracture and very limited and painful range of motion. The tendon was strung like on a bow across the joints of the toe. Pre-operative x-rays showed mininal hallux abductus, high normal intermetatarsal angle, and deviation from normal anatomical alignment of the big toe and first metatarsal head plantarly and laterally. The toe was raised and appeared shortened.
13. Dr. Cullen planned to operate to restore anatomical position, restore functional balance, restore length to the metatarsal and the extensor hallucis longus tendon, and restore function to the left third and fourth digits.
14. Mrs. Taylor approached the health maintenance organization (“HMO”) for approval to have Dr. Cullen perform the recommended surgery. The HMO denied permission even after appeal. Mrs. Taylor decided to go ahead and pay for the expense out of her own pocket.
15. On July 15,1997, Mrs. Taylor underwent revision foot surgery to restore function and stability to her left foot, including reverse distal “L” osteotomy with rigid internal fixation to elevate and lengthen the first metatarsal head; fusion of the big toe to restore alignment and stability and reduce flexion contracture; arthrodesis of the left third and fourth proximal interphalangeal joints to provide balance and stability to the foot; and extensor lengthening to restore balance.
16. On the order of Dr. Cullen, Mrs. Taylor remained off her feet for eight weeks at home and then underwent a course of physical therapy. Thereafter, Mrs. Taylor was allowed to bear full weight on her foot. She wore a special shoe. Dr. Cullen anticipated that Mrs. Taylor would be able to work with minimal restriction and also be employable with minimal restrictions by early 1998.
17. Mrs. Taylor’s condition after June 28, 1996 was caused by the surgery Dr. Arbetter performed. The complications were the result of inadequate fixation and a poorly planned, poorly executed and poorly fixated osteotomy. These caused the hallux elevation, the limited and painful range of motion, the rigid flexion contracture and the post-operative fibrosis. Dr. Arbetter’s post-operative note claiming “good position and healing” was misleading. Misdiagnosis of Mrs. Taylor’s original condition, followed by failure to diagnose and treat a post-operative complication in a timely manner directly led to a prolonged period of disability and pain.
18. Mrs. Taylor has been disabled since her surgery in 1996 and disabled from her employment from December 20, 1996 until January 1998. She had an earning capacity of $600.00 per week and has lost earnings of approximately $35,000.00 to $40,000.00. In addition, her bills have exceeded $20,000.00, of which over $17,000.00 have been paid out of pocket.
19. Mrs. Taylor has undergone great stress and discomfort; one of the extreme manifestations of this stress was the loss of hair in 1997. Her husband has had to come out of retirement to make up for Mrs. Taylor’s lost earning capacity. Mrs. Taylor was formerly active in walking and dancing. She enjoyed going to the beach; she can no longer do these activities to the same degree. Her quality of life has been greatly diminished. Her condition appears to have stabilized. She has seen no real improvement in her condition over the last seven months.
CONCLUSIONS OF LAW
1. Dr. Arbetter was obligated to exercise that degree of care and skill of the average qualified podiatrist practicing in 1996. Stepakoff v. Kantar 393 Mass. 836, 840-41 (1985). If he failed to exercise that degree of care and skill and that failure caused harm to Mrs. Taylor, Dr. Arbetter is liable to Mrs. Taylor for damages caused by that harm. Id. As evidence that he failed in that duty is the opinion of Dr. Cohen that the surgery performed on Mrs. Taylor on June 28, 1996 had a direct causal relation to the complications, pain and other harm she experienced thereafter.
2. The damages claimed by Mrs. Taylor include her medical bills, lost earnings, physical and mental pain and suffering and the cost of her trip to Hawaii. All of these damages are compensable. Kuppens v. Davies, 38 Mass.App.Ct. 498, 500 n.7, rev. denied, 420 Mass. 1105 (1995); G.L.c. 231, §60F.
3. The Court finds that Mrs. Taylor is entitled to damages for medical bills, lost earnings, physical and mental pain and suffering in the total amount of $95,000. The Court has awarded no amount for damages for the cost of her trip to Hawaii, since she would have gone anyway and she was unable to identify any expenses that were added to her trip because of her condition.
ORDER
Based on the above findings of fact and conclusions of law, this Court ORDERS that judgment be entered against the defendant in the amount of $95,000, plus interest and costs.