van Gestel, J.
This matter is before the Court on an emergency motion by the defendant, Sebastian Sepulveda, M.D. (“Dr. Sepulveda”), seeking preliminary injunctive relief “in order to maintain the status quo of the Practice pending resolution of the underlying dispute and to enjoin and restrain the Plaintiff, Roy Maletz[, M.D. (“Dr. Maletz”),] from unilaterally taking actions to force dissolution of the Practice and place patients at risk.”
BACKGROUND
Dr. Maletz and Dr. Sepulveda joined in a medical practice focusing on nephrology in the year 2000. They formed Nephrology Associates of the Merrimack Valley, P.C. (“NAMV”) pursuant to G.L.c. 156A. They are the only, and equal, shareholders of NAMV.
In a relatively short period of time after the formation of NAMV, the two physicians became in significant and growing disagreement about all aspects of the practice together, including both the business side and the treatment of patients. The dispute has become professionally ugly and embarrassing. Further, it appears to this Court that — contrary to theiroaths as physicians — patient treatment is being used somewhat as leverage for monetary purposes.
The underlying lawsuit seeks resolution of the dispute, including, by recent amendment, dissolution of NAMV pursuant to G.L.c. 156D, sec. 14.30(2)(i) and (ii).
On October 27, 2004, Judge Botsford entered an order restraining both Dr. Maletz and Dr. Sepulveda from withdrawing more that $10,000 from NAMV and restrained NAMV from disbursing any funds other than in the ordinary course of business, and disbursing any funds beyond $10,000 to or for either Dr. Maletz and Dr. Sepulveda.
Shortly thereafter, on November 15, 2004, Judge Botsford, on the parties’joint request, issued an order of appointment of Joseph T. Jordan (“Jordan”) as “Temporary Neutral Administrator” of NAMV. Jordan’s duties include being “solely responsible for maintaining all aspects of the current administration and operation of the NAMV practice, including authority to incur and pay for routine office expenses; authority to pay salary . . . , wages, and benefits; authority to assure compliance with government and third-party insurance requirements for security of drugs and vaccines, safeguard for patient records, and protection of patient privacy; and support for and assistance to the Office Manager in direction of the administrative and nursing staff.” Patient treatment, of course, was left to the physicians.
The Court’s attention has been called to Paragraph 15 of Dr. Sepulveda’s counterclaim in this case. The counterclaim was filed on November 26, 2004. Paragraph 15 reads, in its entirety, as follows:
15. Dr. Maletz has over the past several years failed to conform his treatment of patients to the mandates of the medical profession, which actions have placed patients at risk and placed the reputation of [NAMV] at risk. Those incidents have included his failure to properly diagnose patients’ symptoms, failure to properly read lab results, failure to determine proper courses of treatment for patients, failure to adequately perform medical procedures such *128 as catheterization, failure to take correct patient history, failure to document patient symptoms, failure to discover conditions, failure to conduct full physicals, failure to perform all rounds and discharge patients, failure to provide adequate follow up care, failure to provide adequate discharge instructions; failure to remember reasons or justification for prescribed courses of treatment; failure to properly round on dialysis patients; faking monthly rounds as dictated by the Department of Health; performing inappropriate procedures; not following proper sterile and monitoring techniques leading to unnecessary patient complications like excessive bleeding.
It would be difficult to be much more scathing in the criticism of Dr. Maletz than that of his “partner,” Dr. Sepulveda, in his counterclaim. The classic definition of medical malpractice is; “Negligence of a physician who practices a specialty consists of a failure to exercise the degree of care and skill of the average qualified physician practicing that specialty, taking into account the advances of the profession and the resources available to the physician.” Stepakof v. Kantar, 393 Mass. 836, 840 (1985). A nephrologist is one who practices a specialty. What Dr. Sepulveda charges certainly fits as “a failure to exercise the degree of care and skill of the average qualified physician practicing that specially.”
The news of the split between Dr. Maletz and Dr. Sepulveda is widely known in the Merrimack Valley medical community. Much of the nephrology practice is handled by two small practices of three to five physicians each, and comes from referrals from other physicians.
Further, the case file includes copies of letters to Dr. Maletz from ten different Merrimack Valley referring physicians who have become aware of the present dispute requesting, for the good of their patients, that Dr. Maletz not permit Dr. Sepulveda to serve as cover for their patients. The concerns are said to be about the different medical philosophies of Dr. Maletz and Dr. Sepulveda over treatment and concerns that contrary medical directives or treatment will be harmful to the referred patients.
On February 28, 2005, Dr. Maletz issued an “Important Notice to our Patients” announcing that cross-coverage between Dr. Maletz and Dr. Sepulveda will cease. This, evidently, is part of what is behind the present motion. Among other things, Dr. Sepulveda wants a preliminary injunction essentially keeping matters in status quo ante the notice regarding cross-coverage.
To the extent that the charges in the counterclaim are factual in nature, they are binding on Dr. Sepulveda. G.L.c. 231, sec. 87. Caggiano v. Marchegiano, 327 Mass. 574, 581 (1951). It is not difficult, therefore, for this Court to understand why Dr. Maletz does not want to continue to cover, as an accommodation, for Dr. Sepulveda, and it is not at all apparent why Dr. Sepulveda, if he truly means what he said in his counterclaim, wants this Court to order Dr. Maletz to cover Dr. Sepulveda’s patients.
DISCUSSION
In order to prevail on his requests for a preliminary injunctive relief, Dr. Sepulveda bears the burden of showing: his likelihood of success on the merits; that he will suffer irreparable harm if the relief sought is not granted; and that his harm, without that relief, outweighs any harm to Dr. Maletz from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). The Court must “also consider! ] whether the relief sought will adversely affect the public.” Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001). See also Commonwealth v. Mass. CRINC, 392 Mass. 443, 447 (1983); Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).
Under ordinary circumstances, in a situation such as that presented, injunctive relief maintaining the status quo would likely be granted. Here, however, there is a public interest quotient that cannot be overlooked.[1] Dr. Maletz and Dr. Sepulveda, among other things, disagree strongly on appropriate ways to treat patients with kidney failure issues. Dr. Sepulveda appears to favor a much more aggressive use of dialysis. Indeed, Dr. Sepulveda has suggested that Dr. Maletz is too timid in his use of dialysis.
Setting aside those issues in the Cheney case relating to Dr. Sepulveda’s need to show his likelihood of success on the merits, or that he will suffer irreparable harm if the relief sought is not granted, and that his harm, without the relief, outweighs any harm to Dr. Maletz from being enjoined,[2] this Court is compelled by the public interest concern relating to the patients. The law in Massachusetts recognizes a strong public interest in allowing patients to consult with and be treated by a physician of their choice. See, e.g., Falmouth Ob-Gyn, supra, 417 Mass, at 182. Patients, with guidance from their physicians, are the appropriate persons to participate in that process. Indeed, it would be a very rare occasion in which a judge could appropriately order a physician to treat a patient or order a competent patient to accept that physician’s treatment.
ORDER
For the foregoing reasons, this Court is of the belief that the public interest in favor of the rights and welfare of patients, on the facts of this case as presented in the motion papers, dictates that the Emergency Motion of Defendant, Sebastian Sepulveda, for a Preliminary Injunction to Maintain Status Quo Pending Resolution of Claims Between the Parties be DENIED.

Physicians seem no better than others in their quest for profits and in overlooking the concerns of their patients in *129 the process. See, e.g., Middlesex Neurological Associates, Inc. v. Cohen, 3 Mass.App.Ct. 126 (1975), about which this Court is quite familiar. This case led to the enactment of G.L.c. 112, sec. 12X. See also Falmouth Ob-Gyn Associates, Inc. v. Abisla, 417 Mass. 176, 182 (1994).

No affidavit evidence supports Dr. Sepulveda’s motion.