Kenneth W. **FREITAS**, Plaintiff,

v.

**EMHART CORPORATION, U.S.M. Corporation, Farrell Company, The F.C. Holding Corp., and Farrell Corporation, Defendants.**

Civ. A. No. 87–1594–T.

United States District Court,
D. Massachusetts.

July 18, 1989.

---

David P. Cassella, Sims & Sims, Brockton, Mass., for plaintiff.

Faith A. LaSalle, Morrison, Mahoney & Miller, Boston, Mass., for Emhart Corp.

## MEMORANDUM

TAURO, District Judge.

An examination of this case's procedural history and underlying facts is necessary to put in perspective defendant Emhart Corporation's (Emhart's) twin motions to strike answers to interrogatories and for summary judgment.

Plaintiff's hand was cut by a rubber mill while he was working for the Goodyear Tire and Rubber Company (Goodyear). Plaintiff claims that defendant Farrell Corporation (Farrell) improperly designed and manufactured the rubber mill because it lacked a safety guard and an adequate emergency shut off system.[1]

Emhart originally conceded in answers to interrogatories that Emhart's predecessor, Farrell, manufactured and sold the rubber mill in 1925, and that it was designed in the mid 1800's. Those answers, prepared by one of Emhart's engineers, Arnold Baldwin, were based on an examination of poor quality microfilm copies of old business records.[2]

Subsequent to answering the interrogatories, Baldwin obtained better quality copies of the business records. After examining those records, Baldwin discovered that Farrell had neither designed nor manufactured the rubber mill, but had only supplied some parts for the rubber mill. Rather, it was Goodyear that supplied the remainder of the parts and assembled the machine, relying at least in part on its own engineering drawings.

Specifically, Baldwin found that Goodyear had designed and installed its own emergency shut-off system and had modified the cutting apparatus. Originally, the rubber mill had been equipped with a scraper knife assembly manufactured by Farrell. Subsequent to the sale of the mill's parts, Goodyear substituted the slitter knife system that ultimately injured plaintiff. Emhart maintains, without contradiction by plaintiff, that the original scrapper blade system is markedly different from the slitter knife system that injured plaintiff.

After determining that Farrell had neither manufactured nor designed the rubber mill that injured plaintiff, Emhart amended its interrogatory answers to conform to the information Baldwin had discovered, and has now moved to strike its prior answers that mistakenly conceded responsibility for manufacture. Because there is no evidence of manufacture independent of its prior answers, Emhart has also moved for summary judgment.

### I.

Parties must seasonably correct erroneous discovery responses. Rule 26(e)(2)(A) provides: "A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which ... the party knows that the response was incorrect when made." Fed.R. Civ.P. 26(e)(2)(A).

■ The Rules, however, are silent as to the effect of a corrected interrogatory an-

---

1. Goodyear is not a defendant in this action. The originally named defendants are successor companies to defendant Farrell. Without conceding liability, defendant Emhart has stipulated that it would be liable if any damages are awarded. The other defendants have been dismissed by stipulation of the parties.

2. Because the transaction took place more than 60 years ago, no one has personal knowledge of the sale of the rubber mill to Goodyear.

swer on the previous answer. Defendant argues that the earlier, now erroneous, answer should be stricken and given no probative weight. Plaintiff disagrees.

While acknowledging defendant's obligation to amend its interrogatory answer to reflect the newly discovered information, plaintiff asserts that the prior answer should be admissible at trial as an evidentiary admission of design and manufacture by Farrell. *See* Fed.R.Civ.P. 801(d)(2) (an admission of a party is not hearsay). Essentially, plaintiff's position is that even though the prior answer is clearly incorrect, it nonetheless establishes a jury issue on the question of manufacture. *See Mangual v. Prudential Lines, Inc.*, 53 F.R.D. 301, 302–03 (E.D.Pa.1971) (the jury is entitled to consider both versions of the interrogatory answer and determine which is correct). *See also* 1 R. Givens, *Manual of Federal Practice* § 5.154 (3d ed. 1987) ("If the original answer was more favorable to the adversary [than the amended interrogatory answer], both versions could be offered as admissions under FRE 801(d)(2)(C), and the argument made more persuasive that the correction was an afterthought to avoid the effect of the original."). *But see Ray v. J.C. Penney Co.*, 274 F.2d 519, 521 (10th Cir.1959) (refusing to allow an earlier interrogatory answer as to the type of dye used in a pair of work gloves to stand because to do so "would have resulted in the perversion of the object of a trial which is, and always must be, to establish the truth.").

Although plaintiff is correct that defendant's initial interrogatory answer would constitute an evidentiary admission, the inquiry does not end there. Rule 33(b) governs the use of interrogatory answers at trial and provides that "[interrogatory] answers may be used [at trial] to the extent permitted by the rules of evidence." Fed. R.Civ.P. 33(b). And so before defendant's initial interrogatory answer may be used at

trial, its proffer must overcome all possible evidentiary objections. Classifying the initial interrogatory answer under Rule 801 as an evidentiary admission only serves to avoid a possible hearsay objection. It does not prescribe all other possible objections.

Indeed, the advisory committee notes to Rule 33(b) underscore the fact that not all interrogatory answers may be used at trial. "The rule does not affect the power of a court to permit *withdrawal* or amendment of answers to interrogatories." Fed.R. Civ.P. 33(b), Advisory Committee Notes (1970) (emphasis added).

Reading the committee notes on Rule 33(b) in conjunction with Rule 26(e), this court holds that interrogatory answers subsequently amended may be stricken if the initial answer fails to satisfy all possible evidentiary objections. The next issue is whether Emhart's initial interrogatory answer is admissible under the Federal Rules of Evidence.

## II.

■ Before a document is admissible under the Federal Rules, it must be relevant, authentic, not hearsay and must satisfy the best evidence rule. Only the latter requirement presents a possible bar to the admissibility of the interrogatory in question.

Federal Rule of Evidence 1002 provides that "[t]o prove the content of a writing ... the original writing ... is required." Fed.R.Evid. 1002. A person may not testify, therefore, about the contents of a document if the document itself is available. In such circumstances, the document speaks for itself.

The interrogatory answer at issue in this case was based solely on a review of corporate records. As such, the answer is merely an opinion of the defendant as to the content of the underlying records, something that the best evidence rule prohibits.[3]

---

**3.** Plaintiff's reliance on *Mangual v. Prudential Lines, Inc.*, 53 F.R.D. 301 (E.D.Pa.1971), is misplaced. In *Mangual* defendant's initial interrogatory answer admitted that a rug was present when plaintiff was injured. The subsequent amendment denied the presence of the rug.

The court permitted both interrogatory answers to go to the jury. *Id.* at 302–03. But in that case, the interrogatory answer did not depend on a review of other documents. Unlike the case at bar, therefore, there was no best evidence objection available in *Mangual* that

Accordingly, defendant's motion to strike its original answers to plaintiff's interrogatories is allowed.[4]

### III.

■ Defendant has also moved for summary judgment pointing out that all the evidence indicates that it neither manufactured nor designed the rubber mill that injured plaintiff. Accordingly, defendant argues that it cannot be held liable for any of the defects plaintiff has identified—namely the absence of any guard for the slitter knives, the inadequate emergency shut-off system and the failure to warn of these deficiencies.

All the documentary evidence submitted to this court supports defendant's contention that it did not design, manufacture or sell any portion of the rubber mill that contributed to plaintiff's injury. Plaintiff's contrary assertion is without evidentiary support.[5]

The bill of materials and the mill specification forms indicate that Farrell supplied approximately half of the required parts and that Goodyear supplied the remainder of the parts for the mill.[6] Significantly, these documents clearly show that defendant did not manufacture or sell either the slitter knife assembly or the emergency shut-off system to Goodyear. And plaintiff does not dispute that these critical parts were not supplied by defendant.[7]

Defendant, as a supplier of parts, cannot be held liable unless there was a defect in the parts it sold or it was responsible for designing the rubber mill in question. *See Mitchell v. Sky Climber, Inc.*, 396 Mass. 629, 631, 487 N.E.2d 1374 (1986) (a supplier of component parts for equipment that it did not design cannot be held liable for injuries not related to a defect in the parts that it sold). That is true even though defendant knew its parts were going to be incorporated into the rubber mill. *Id.* (manufacturer of a motor had no duty to insure that the scaffolding it was incorporated into was properly rigged or that the motor was properly installed). And defendant, as a supplier of parts, is under no duty to warn the purchaser (Goodyear) or the ultimate user (plaintiff) of any danger that may arise after the components are assembled. *Id.* Only if there is some defect in the parts supplied that caused the injury, or if defendant designed a portion of the rubber mill that contributed to plaintiff's injury, can plaintiff avoid summary judgment.

Plaintiff bases his negligence and warranty claims on defendant's failure to place a guard over the slitter knife assembly, the inadequacy of the rubber mill's emergency shut-off system and defendant's failure to warn of these inadequacies. There is no evidence that would warrant holding defendant responsible for any of these alleged deficiencies.

---

would have precluded admission of the interrogatory answers.

4. Additionally, all references in defendant's response for production of documents that refer to Farrell as the manufacturer of the rubber mill are similarly stricken.

5. Plaintiff cannot rely on defendant's initial interrogatory answer as evidence that defendant manufactured and designed the rubber mill. That answer has been stricken. *See* § II, *supra.* Accordingly, the answer is of no effect. Similarly, plaintiff's reliance on portions of Baldwin's deposition do not support the argument that Farrell designed or manufactured the rubber mill. Baldwin consistently maintained that Farrell only sold some of the parts necessary to build the rubber mill and that Goodyear supplied the remainder of the parts.

6. Farrell sold the following parts for the rubber mill to Goodyear: cast iron frames for the machine, bearing boxes and bearings, *guides*, ad-

justing screws, unfinished mill rolls and accessories, connecting gears with guards, mixer pan, scraper blade parts as well as other miscellaneous hardware. Goodyear supplied itself with the following parts for the rubber mill: bedplates, drive gear and pinion with guards, supporting bearings for the drive pinion, drive shaft and reduction gearing, drive motor and electrical controls, brake system and operating controls, safety switch and safety cables as well as other miscellaneous hardware.

7. Indeed, plaintiff has not filed a statement of material facts in dispute as required by Local Rule 18. The rule specifically provides that "[m]aterial facts set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." L.R. 18.

The records indicate that Farrell sold a cutting mechanism, known as a scraper blade assembly, to Goodyear. But the sales records and design drawings establish that Farrell neither designed, manufactured nor sold the slitter knife assembly that was on the rubber mill when plaintiff's hand was injured.[8] Those design drawings demonstrate that the two cutting mechanisms are markedly different. Any defect in the slitter knife system, therefore, cannot support a claim against a defendant who neither designed, manufactured nor sold that mechanism.

Plaintiff's complaint that defendant failed to provide an adequate emergency shut-off system fares no better. A review of the contemporaneous documents shows that Goodyear supplied its own emergency shut-off switch, safety cables, braking system and all operational controls. It was Goodyear, not defendant, who produced the emergency shutoff system. And there is no evidence to indicate that defendant played any part in designing that emergency shut-off system. Any deficiency in the emergency shut-off system, therefore, cannot be a basis for the imposing liability on the defendant.

The final theory relied upon by plaintiff is defendant's alleged failure to warn of deficiencies in the rubber mill. But as the Supreme Judicial Court stated in *Mitchell*, "a supplier of a component part containing no latent defect has no duty to warn the subsequent assembler or its customers of any danger that may arise after the components are assembled." 396 Mass. at 631, 487 N.E.2d 1374.

Because plaintiff has failed to produce any evidence that defendant designed, manufactured or sold any of the components of the rubber mill which contributed to plaintiff's injury, defendant's motion for summary judgment is allowed.

An order will issue.

---

**8.** In addition, defendant's failure to controvert this fact in a local rule 18 statement would have been sufficient to deem the fact admitted for purposes of this motion. *See* L.R. 18.