**Robert CIPOLLONE, Plaintiff, Appellant,**

v.

**YALE INDUSTRIAL PRODUCTS, INC.; Davco Corporation of Tennessee, Defendants, Appellees.**

**No. 99–1494.**

United States Court of Appeals, First Circuit.

Heard Dec. 10, 1999.

Decided Jan. 28, 2000.

Charles E. Berg, with whom Office of Albert E. Grady was on brief for appellant.

Joel F. Pierce, with whom Michael S. Bonner and Pierce, Davis, Fahey & Perritano, LLP, were on brief for appellee Davco Corporation of Tennessee.

David R. Schmahmann, with whom Thomas O. Bean and Nutter, McClennen & Fish, LLP, were on brief for appellee Yale Industrial Products, Inc.

Before STAHL, Circuit Judge, CYR, Senior Circuit Judge, and LIPEZ, Circuit Judge.

STAHL, Circuit Judge.

Plaintiff-appellant Robert Cipollone appeals a judgment in favor of defendants-appellees Yale Industrial Products, Inc. ("Yale") and Davco Corporation of Tennessee ("Davco"). Cipollone injured his hand while working on a loading dock manufactured by Yale and installed by Davco at a Federal Express Corporation ("FedEx") facility in Franklin, Massachusetts. Basing jurisdiction on diversity, he sued defendants in the District of Massachusetts for breach of warranty, negligence, and violations of Massachusetts General Laws ch. 93A. Defendants successfully moved

for summary judgment.[1] Cipollone appeals, and we affirm.

## I.

FedEx, working with an outside consultant, designed a material-handling system for its Franklin facility. It then hired Yale to manufacture a customized dock lift, which was to become a component part of its material-handling system. Yale constructed the lift to FedEx's specifications and delivered it to FedEx. The lift, like many of its type, had a removable handrail. Upon receipt of the dock lift, another FedEx contractor, Davco, integrated the lift into the overall material-handling system. FedEx's drawings directed Davco to install the lift adjacent to a catwalk, which had no handrail. While inspecting the project, FedEx's engineers determined that a fixed handrail should be installed on the catwalk to obviate what it perceived as a potential fall hazard when the lift was in its lowered position. Both the lift and the catwalk had two horizontal rails with a vertical rail on both ends. There was no posted warning of the potential for a person or object to get caught between the catwalk and the lift.[2]

Cipollone worked as a truck driver for FedEx. He was loading packages onto a truck at the Franklin facility on June 5, 1996, after the handling system had come into use. While the exact circumstances of the accident are not entirely clear, we present them to the best of our understanding. Cipollone and others loaded cans onto the lift. Before the lift was moved, Cipollone attempted to slide onto the catwalk a tool called a J-bar by pushing it between the rails of the lift and the stationary rails of the catwalk. As Cipollone was moving the J-bar, the lift operator began to move the lift, and Cipollone tried to pull his arms from between the bars. Cipollone's hand was caught between the bars, and his left thumb was severed. Cipollone contends he was not holding anything at the instant his hand was injured.

Cipollone brought suit against Yale and Davco for breach of warranty, negligence, and unfair trade practices. After discovery, Yale and Davco each moved for summary judgment on all counts. In his opposition, Cipollone argued that the potential testimony of his expert witness, Bradford Schofield, would create a question of fact as to whether the proximity of the rails on the moving lift and the stationary rails on the catwalk should have put the defendants on notice of the shearing hazard described in note 2, *supra.* Schofield was prepared to testify that the narrow spacing of the two handrails created a shearing hazard for persons grasping objects within that space. The district court concluded that Schofield's opinion was "sheer *ipse dixit*" and ruled that the court would exclude it at trial. Because no other evidence supported Cipollone's claims, the court granted summary judgment to both defendants.

## II.

We review the grant of summary judgment de novo, *see EEOC v. Amego, Inc.,* 110 F.3d 135, 141 (1st Cir.1997), and draw all reasonable inferences in favor of the nonmovant, *see Champagne v. Servistar Corp.,* 138 F.3d 7, 8 (1st Cir.1998). Because this case is before us on diversity jurisdiction, and all events took place in Massachusetts, we apply Massachusetts law. *See Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 204 (1st Cir.1994) ("[A] federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state.").

---

1. The district court ruled that summary judgment on the products liability and negligence claims disposed of the ch. 93A claim as well. Plaintiff does not appeal the disposition of the ch. 93A claim.

2. The two rails create what is called a "pinch point," which simply is a space between which something can get caught. A "shearing hazard" exists when getting caught in the pinch point likely would result in injury.

## III.

Cipollone contends that Yale negligently designed and manufactured the lift, negligently failed to warn him of the shearing hazard, and breached its warranty of merchantability. He contends that Davco negligently installed the lift and negligently failed to warn him of the hazard. We address in turn the claims against each party.

## A.

■ We begin with Cipollone's claims against Yale. When addressing a claimed breach of warranty of merchantability, we focus on the product itself rather than on the conduct of the user. *See Colter v. Barber–Greene Co.,* 403 Mass. 50, 525 N.E.2d 1305, 1313 (1988). In addition, "a defendant may be liable on a theory of breach of warranty of merchantability even though he or she properly designed, manufactured, and sold his or her product." *Id.* To win a breach of warranty claim, plaintiff must "prove a defect in the product or an unreasonably dangerous condition which existed at the time the product left the defendant's control." *Enrich v. Windmere Corp.,* 416 Mass. 83, 616 N.E.2d 1081, 1085 (1993).

■ When a component of an integrated product is not itself defective, the maker of the component is not liable for injury that results from a defect in the integrated product. *See Mitchell v. Sky Climber, Inc.,* 396 Mass. 629, 487 N.E.2d 1374, 1376 (1986) ("[A] supplier of a component part containing no latent defect has no duty to warn the subsequent assembler or its customers of any danger that may arise after the components are assembled."); *see also Freitas v. Emhart Corp.,* 715 F.Supp. 1149, 1152 (D.Mass.1989) (discussing Massachusetts law); *Murray v. Goodrich*

*Eng'g Corp.,* 30 Mass.App.Ct. 918, 566 N.E.2d 631, 632 (1991) (recognizing that a component part manufacturer is not liable for defects in the assembled product); Restatement (Third) of Torts: Products Liability § 5 (1998). "If the component is not itself defective, it would be unjust and inefficient to impose liability solely on the ground that the manufacturer of the integrated product utilizes the component in a manner that renders the integrated product defective." *Id.* cmt. a. Therefore, the manufacturer of a component is liable only if the defect existed in the manufacturer's component itself.

■ In this case, Yale designed to FedEx's specifications a lift, which FedEx later integrated into a larger package-handling system. The Restatement contemplates components that "function on their own but still may be utilized in a variety of ways by assemblers of other products." *Id.* Such components would include a dock lift that is integrated into a package-handling system. *Cf. Buonanno v. Colmar Belting Co.,* 733 A.2d 712, 717 (R.I.1999) (adopting section 5 and approving its application to major components of a large conveyor belt system). Because there is no evidence that Yale's lift itself was defective when Yale delivered it to FedEx and because Yale's product is merely a component of FedEx's larger package-handling system, summary judgment for Yale was proper.[3]

## B.

■ Next, we turn to whether summary judgment was proper for Davco. Cipollone claims Davco negligently installed the Yale lift. As a general matter, negligence requires a duty, breach of that duty, "but for" and proximate causation of harm, and damages. *See Correia v. Firestone Tire &*

---

3. Our conclusion that there is no breach of warranty of merchantability justifies summary judgment on Cipollone's negligence claims against Yale as well. *See Hayes v. Ariens Co.,* 391 Mass. 407, 462 N.E.2d 273, 275 (1984) ("A defendant in a products liabili-

ty case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true. A defendant cannot be found to have been negligent without having breached the warranty of merchantability.").

*Rubber Co.,* 388 Mass. 342, 446 N.E.2d 1033, 1038 (1983). To prove Davco's negligence in this case, Cipollone proffered Schofield's expert testimony. As we have stated, the district court determined that Schofield's "opinion [was] sheer *ipse dixit*"—and therefore would be inadmissible at trial—because his references to various standards either were not on point or did not support the plaintiff's claims. For us to determine whether Davco acted negligently, we first must review whether the district court's decision to exclude Schofield's testimony was proper.

The Supreme Court has observed that Federal Rule of Evidence 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court also has made clear that a trial judge must make these determinations whenever scientific, technical, or other specialized knowledge is at issue. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (applying *Daubert* to the testimony of "an expert in tire failure analysis"). The ultimate purpose of the *Daubert* inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue.

■ According broad deference to the district court's determination, *see General Electric Co. v. Joiner,* 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ("[T]he question of admissibility of expert testimony is ... reviewable under the abuse-of-discretion standard."), we turn to the proffered expert testimony in this case. In a written report and at his deposition, Schofield explained that the gap between the fixed and the moving handrail measured between 3.25 and 3.50 inches and that, based on anthropomorphic data, a male hand grasping an object could measure 4.50 inches in width. While conceding that "[i]t is probably unrealistic to expect a manufacturer of such lifts to know of all these arrangements and configurations and the specific hazards that may be created in combination with their product," Schofield nonetheless concluded that this particular lift as installed was too dangerous and that Yale and Davco had a duty to warn its users about its inherent risks.

The district court found that this proposed testimony failed to satisfy *Daubert* because it "did not meet that threshold necessary to assist the jury." We agree. To be admissible, Schofield's testimony must have "a valid ... connection to the pertinent inquiry." *See Daubert,* 509 U.S. at 592, 113 S.Ct. 2786. It does not. Schofield testified that the 3.50 inch pinch point created a shearing hazard because if a man were holding something 2.10 inches in diameter, his hand might measure 4.50 inches from the metacarpal-phalangial joint of the middle finger to the proximal interphalangial joint of the thumb. But Cipollone never contended he was holding anything during the accident; indeed, he testified he was holding nothing when the accident occurred. Because Schofield described a shearing hazard that did not cause Cipollone's injury, and Cipollone described an injury that did not result from the shearing hazard Schofield described, Schofield's testimony is irrelevant and properly was excluded under *Daubert.*

## IV.

For the foregoing reasons, we ***affirm*** the district court's grant of summary judgment.