USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1494

 ROBERT CIPOLLONE,

 Plaintiff, Appellant,

 v.

 YALE INDUSTRIAL PRODUCTS, INC.; DAVCO CORPORATION OF TENNESSEE,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Douglas P. Woodlock, U.S. District Judge]

 Before

 Stahl, Circuit Judge,
 Cyr, Senior Circuit Judge,
 and Lipez, Circuit Judge.
 
 
 
 
 Charles E. Berg, with whom Office of Albert E. Grady was on
brief for appellant.
 Joel F. Pierce, with whom Michael S. Bonner and Pierce, Davis,
Fahey & Perritano, LLP, were on brief for appellee Davco
Corporation of Tennessee.
 David R. Schmahmann, with whom Thomas O. Bean and Nutter,
McClennen & Fish, LLP, were on brief for appellee Yale Industrial
Products, Inc.

January 28, 2000

 
 

 STAHL, Circuit Judge. Plaintiff-appellant Robert
Cipollone appeals a judgment in favor of defendants-appellees Yale
Industrial Products, Inc. ("Yale") and Davco Corporation of
Tennessee ("Davco"). Cipollone injured his hand while working on
a loading dock manufactured by Yale and installed by Davco at a
Federal Express Corporation ("FedEx") facility in Franklin,
Massachusetts. Basing jurisdiction on diversity, he sued
defendants in the District of Massachusetts for breach of warranty,
negligence, and violations of Massachusetts General Laws ch. 93A. 
Defendants successfully moved for summary judgment. Cipollone
appeals, and we affirm.
 I.
 FedEx, working with an outside consultant, designed a
material-handling system for its Franklin facility. It then hired
Yale to manufacture a customized dock lift, which was to become a
component part of its material-handling system. Yale constructed
the lift to FedEx's specifications and delivered it to FedEx. The
lift, like many of its type, had a removable handrail. Upon
receipt of the dock lift, another FedEx contractor, Davco,
integrated the lift into the overall material-handling system. 
FedEx's drawings directed Davco to install the lift adjacent to a
catwalk, which had no handrail. While inspecting the project,
FedEx's engineers determined that a fixed handrail should be
installed on the catwalk to obviate what it perceived as a
potential fall hazard when the lift was in its lowered position. 
Both the lift and the catwalk had two horizontal rails with a
vertical rail on both ends. There was no posted warning of the
potential for a person or object to get caught between the catwalk
and the lift.
 Cipollone worked as a truck driver for FedEx. He was
loading packages onto a truck at the Franklin facility on June 5,
1996, after the handling system had come into use. While the exact
circumstances of the accident are not entirely clear, we present
them to the best of our understanding. Cipollone and others loaded
cans onto the lift. Before the lift was moved, Cipollone attempted
to slide onto the catwalk a tool called a J-bar by pushing it
between the rails of the lift and the stationary rails of the
catwalk. As Cipollone was moving the J-bar, the lift operator
began to move the lift, and Cipollone tried to pull his arms from
between the bars. Cipollone's hand was caught between the bars,
and his left thumb was severed. Cipollone contends he was not
holding anything at the instant his hand was injured.
 Cipollone brought suit against Yale and Davco for breach
of warranty, negligence, and unfair trade practices. After
discovery, Yale and Davco each moved for summary judgment on all
counts. In his opposition, Cipollone argued that the potential
testimony of his expert witness, Bradford Schofield, would create
a question of fact as to whether the proximity of the rails on the
moving lift and the stationary rails on the catwalk should have put
the defendants on notice of the shearing hazard described in note
2, supra. Schofield was prepared to testify that the narrow
spacing of the two handrails created a shearing hazard for persons
grasping objects within that space. The district court concluded
that Schofield's opinion was "sheer ipse dixit" and ruled that the
court would exclude it at trial. Because no other evidence
supported Cipollone's claims, the court granted summary judgment to
both defendants. 
 II.
 We review the grant of summary judgment de novo, see EEOC
v. Amego, Inc., 110 F.3d 135, 141 (1st Cir. 1997), and draw all
reasonable inferences in favor of the nonmovant, see Champagne v.
Servistar Corp., 138 F.3d 7, 8 (1st Cir. 1998). Because this case
is before us on diversity jurisdiction, and all events took place
in Massachusetts, we apply Massachusetts law. See Ticketmaster-New
York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994) ("[A]
federal court exercising diversity jurisdiction is the functional
equivalent of a state court sitting in the forum state.").
 III.
 Cipollone contends that Yale negligently designed and
manufactured the lift, negligently failed to warn him of the
shearing hazard, and breached its warranty of merchantability. He
contends that Davco negligently installed the lift and negligently
failed to warn him of the hazard. We address in turn the claims
against each party.
 A.
 We begin with Cipollone's claims against Yale. When
addressing a claimed breach of warranty of merchantability, we
focus on the product itself rather than on the conduct of the user. 
See Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1313 (Mass.
1988). In addition, "a defendant may be liable on a theory of
breach of warranty of merchantability even though he or she
properly designed, manufactured, and sold his or her product." Id. 
To win a breach of warranty claim, plaintiff must "prove a defect
in the product or an unreasonably dangerous condition which existed
at the time the product left the defendant's control." Enrich v.
Windmere Corp., 616 N.E.2d 1081, 1085 (Mass. 1993).
 When a component of an integrated product is not itself
defective, the maker of the component is not liable for injury that
results from a defect in the integrated product. See Mitchell v.
Sky Climber, Inc., 487 N.E.2d 1374, 1376 (Mass. 1986) ("[A]
supplier of a component part containing no latent defect has no
duty to warn the subsequent assembler or its customers of any
danger that may arise after the components are assembled."); see
also Freitas v. Emhart Corp., 715 F. Supp. 1149, 1152 (D. Mass.
1989) (discussing Massachusetts law); Murray v. Goodrich Eng'g
Corp., 566 N.E.2d 631, 632 (Mass. App. Ct. 1991) (recognizing that
a component part manufacturer is not liable for defects in the
assembled product); Restatement (Third) of Torts: Products
Liability 5 (1998). "If the component is not itself defective,
it would be unjust and inefficient to impose liability solely on
the ground that the manufacturer of the integrated product utilizes
the component in a manner that renders the integrated product
defective." Id. cmt. a. Therefore, the manufacturer of a
component is liable only if the defect existed in the
manufacturer's component itself.
 In this case, Yale designed to FedEx's specifications a
lift, which FedEx later integrated into a larger package-handling
system. The Restatement contemplates components that "function on
their own but still may be utilized in a variety of ways by
assemblers of other products." Id. Such components would include
a dock lift that is integrated into a package-handling system. Cf.
Buonanno v. Colmar Belting Co., 733 A.2d 712, 717 (R.I. 1999)
(adopting section 5 and approving its application to major
components of a large conveyor belt system). Because there is no
evidence that Yale's lift itself was defective when Yale delivered
it to FedEx and because Yale's product is merely a component of
FedEx's larger package-handling system, summary judgment for Yale
was proper.
 B.
 Next, we turn to whether summary judgment was proper for
Davco. Cipollone claims Davco negligently installed the Yale lift. 
As a general matter, negligence requires a duty, breach of that
duty, "but for" and proximate causation of harm, and damages. See
Correia v. Firestone Tire & Rubber Co., 446 N.E.2d 1033, 1038
(Mass. 1983). To prove Davco's negligence in this case, Cipollone
proffered Schofield's expert testimony. As we have stated, the
district court determined that Schofield's "opinion [was] sheer
ipse dixit" -- and therefore would be inadmissible at trial --
because his references to various standards either were not on
point or did not support the plaintiff's claims. For us to
determine whether Davco acted negligently, we first must review
whether the district court's decision to exclude Schofield's
testimony was proper.
 The Supreme Court has observed that Federal Rule of
Evidence 702 "assign[s] to the trial judge the task of ensuring
that an expert's testimony both rests on a reliable foundation and
is relevant to the task at hand." Daubert v. Merrell Dow Pharm.,
Inc., 509 U.S. 579, 597 (1993). The Court also has made clear that
a trial judge must make these determinations whenever scientific,
technical, or other specialized knowledge is at issue. See Kumho
Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999) (applying
Daubert to the testimony of "an expert in tire failure analysis"). 
The ultimate purpose of the Daubert inquiry is to determine whether
the testimony of the expert would be helpful to the jury in
resolving a fact in issue. 
 According broad deference to the district court's
determination, see General Electric Co. v. Joiner, 522 U.S. 136,
143 (1997) ("[T]he question of admissibility of expert testimony
is . . . reviewable under the abuse-of-discretion standard."), we
turn to the proffered expert testimony in this case. In a written
report and at his deposition, Schofield explained that the gap
between the fixed and the moving handrail measured between 3.25 and
3.50 inches and that, based on anthropomorphic data, a male hand
grasping an object could measure 4.50 inches in width. While
conceding that "[i]t is probably unrealistic to expect a
manufacturer of such lifts to know of all these arrangements and
configurations and the specific hazards that may be created in
combination with their product," Schofield nonetheless concluded
that this particular lift as installed was too dangerous and that
Yale and Davco had a duty to warn its users about its inherent
risks.
 The district court found that this proposed testimony
failed to satisfy Daubert because it "did not meet that threshold
necessary to assist the jury." We agree. To be admissible,
Schofield's testimony must have "a valid . . . connection to the
pertinent inquiry." See Daubert, 509 U.S. at 592. It does not. 
Schofield testified that the 3.50 inch pinch point created a
shearing hazard because if a man were holding something 2.10 inches
in diameter, his hand might measure 4.50 inches from the
metacarpal-phalangial joint of the middle finger to the proximal
interphalangial joint of the thumb. But Cipollone never contended
he was holding anything during the accident; indeed, he testified
he was holding nothing when the accident occurred. Because
Schofield described a shearing hazard that did not cause
Cipollone's injury, and Cipollone described an injury that did not
result from the shearing hazard Schofield described, Schofield's
testimony is irrelevant and properly was excluded under Daubert.
 IV.
 For the foregoing reasons, we affirm the district court's
grant of summary judgment.